HEATHER E. WILLIAMS, SBN 122664
Federal Defender
CHRISTINA SINHA, SBN 278893
MEGAN T. HOPKINS, SBN 294141
Assistant Federal Defenders
801 I Street, Third Floor
Sacramento, California 95814
T: (916) 498-5700
F: (916) 498-5710

Attorneys for Defendant
LINWOOD HOSEA GORDON

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>LINWOOD HOSEA GORDON,<br><br>Defendant. | Case No.  2:21-CR-197-DJC<br><br>**NOTICE OF MOTION AND MOTION TO DISMISS COUNTS TWO, THREE, AND FOUR OF THE SUPERSEDING INDICTMENT FOR STATUTE OF LIMITATIONS VIOLATION**<br><br>Judge: Hon. Daniel J. Calabretta |

TO:   DOJ CEOS CHIEF STEVEN J. GROCKI AND TRIAL ATTORNEYS GWENDELYNN BILLS & ANGELICA CARRASCO, COUNSEL FOR PLAINTIFF:

**PLEASE TAKE NOTICE** that on October 12, 2023, at 9:00 A.M., or as soon thereafter as counsel may be heard before the Honorable Daniel J. Calabretta, United States District Court Judge, Mr. Gordon, through undersigned counsel, will and does hereby move under Federal Rule of Criminal Procedure 12(b)(1) for an order dismissing Counts Two, Three, and Four of the superseding indictment on the grounds that it was filed outside of the applicable statute of limitations.  The motion is based on the below memorandum of points and authorities.

**MOTION**

For the below-detailed reasons, Mr. Gordon moves this honorable Court to dismiss Counts Two, Three, and Four of the superseding indictment under Federal Rule of Criminal Procedure 12(b)(1).  The legal arguments raised herein regarding which statute of limitations applies to offenses prosecuted under the Military Extraterritorial Jurisdiction Act of 2000 appear to be a matter of first impression.

**MEMORANDUM OF POINTS AND AUTHORITIES**

I.    **Relevant Procedural History.**

In April 2017, the government began investigating Mr. Gordon for alleged conduct that gave rise to the instant case.  More than four years later, on October 14, 2021, Mr. Gordon was indicted for allegedly violating: i) 18 U.S.C. § 2244(b) ("abusive sexual contact" occurring "on or about April 26, 2017") (Count 1); and ii) 18 U.S.C. § 2243(a) ("sexual abuse of a minor" occurring "between on or about June 1, 2003 and on or about September 30, 2005") (Count 2).  ECF No. 1.

On June 09, 2022, the government filed a superseding indictment that kept Counts 1 and 2 unchanged, but added two additional counts, all based on the same theretofore known allegations.  ECF No. 33.  Count 3 alleged a violation of 18 U.S.C. § 2241(a)(1) ("aggravated sexual abuse" occurring "between on or about September 30, 2004 to on or about September 30, 2006").  Count 4 alleged a violation of 18 U.S.C. § 2242(1) ("sexual abuse" occurring "between on or about January 1, 2003 and December 31, 2008").  *Id*.

II.   **Location of Alleged Conduct and MEJA Jurisdiction.**

Importantly, all alleged conduct in Counts 2-4 occurred outside the territorial United States in civilian housing on miliary bases in Japan while Mr. Gordon was stationed there as a civilian employee of the Department of Defense.  The complaining witnesses (whom the defense refers to as "Witness 1" and "Witness 2," in compliance with paragraph 12 of the protective order) were living in the same civilian housing as Mr. Gordon at all relevant times.

Counts 2, 3, and 4 allege that the charged conduct occurred "in and around Camp Zuma, Japan" and "in and around Yokusuka Naval Station, Japan."  ECF No. 33 at 2.  "Camp Zuma" is a misspelling of Camp Zama, which is a U.S. Army post in Japan's Kanagawa Prefecture.  Similarly, "Yokusuka Naval Station" is a misspelling of Yokosuka, which in turn refers to Fleet Activities Yokosuka, a U.S. Navy base also located in Japan's Kanagawa Prefecture.

Given the location of the alleged conduct and Mr. Gordon's status, the government has concurrently alleged 18 U.S.C. § 3261 (which is part of the Military Extraterritorial Jurisdiction Act, hereinafter "MEJA") with all four counts.  It is MEJA that ostensibly provides the necessary jurisdiction for all four alleged offenses to be prosecuted in the instant case, as the substantive

statutes themselves are insufficient to do so. In other words, the substantive charging statutes (18 U.S.C. §§ 2244(b), 2243(a), 2241(a)(1), and 2242(1)) can only be applied to Mr. Gordon if MEJA's invocation in this case is proper. As to Counts 2 through 4, it is not.

### III. Extraterritorial Application of U.S. Criminal Laws.

Generally, acts or omissions can only be proscribed as "criminal" if the laws of the location where the act or omission occurred so dictate. *See e.g. Williamson v. Weyerhaeuser Timber Co.*, 221 F.2d 5 (9th Cir. 1955). However, there are certain, carefully delineated exceptions to this rule that allow the extraterritorial application of U.S. criminal law.

The following are necessary predicates for proper extraterritorial application. First, there must be clear evidence of Congressional intent to have such an extraterritorial reach. Restatement (Fourth) of Foreign Relations Law § 404 (Am. L. Inst. 2018); *see also* U.S. Const. Art. I, § 8.

Second, it must be a proper exercise of at least one of Congress' enumerated powers;[1] this prong generally inquires whether the statute is a "means that is rationally related to the implementation of a constitutionally enumerated power." *Id*. at § 403; *see also United States v. Comstock*, 560 U.S. 126, 134 (2010); *see additionally United States ex rel. Toth v. Quarles*, 350 U.S. 11, 13-15, 17-18 (holding no authority to court-martial civilian ex-serviceperson for alleged felonies committed while serving in Korea). This requirement necessarily incorporates the Fifth Amendment's Due Process Clause, which always polices the outer boundaries of Congress' authority to enact laws. *See e.g. United States v. Thomas*, 893 F.2d 1066, 1068 (9th Cir. 1990).

Third, the extraterritorial exercise must be consistent with international law,[2] although some courts have held that this factor falls short of being a requirement and is more of a guideline. *Id*. at § 406; *cf. United States v. Thomas*, 893 f. 2d at 1069 ("[a]lthough Congress is not bound by international law in enacting statutes…out of respect for other nations, courts should not

---

[1] The following argument is raised simply to preserve the issue and will not be the focus of counsel's written or oral arguments: MEJA exceeds the scope of Congress' enumerated powers, and as such, the government does not have the authority to prosecute Mr. Gordon, as MEJA is the only jurisdictional statute noticed in the indictment. This argument has been rejected by many courts. *See e.g. United States v. Green*, 654 F.3d 637 (6th Cir. 2011).

[2] The following argument is raised simply to preserve the issue and will not be the focus of counsel's written or oral arguments. The extraterritorial application of the criminal offenses charged in the superseding indictment via MEJA violates general principles of international law, such that such prosecutions are unlawful. This argument has been rejected by many other courts, including in controlling precedent. *See e.g. United States Vasquez-Velasco*, 15 F.3d 833, 839 (9th Cir. 1994).

unnecessarily construe a congressional statute in a way that violates international law."). Unless Congress explicitly states to the contrary, courts assume that Congress intended to act consistently with international law. *Weinberger v. Rossi*, 456 U.S. 25, 32 (1982).

Assuming the law in question can be properly applied extraterritorially, the prosecution must still commence within the required statute of limitations. Which statute of limitations applies in MEJA prosecutions is the main topic of this memorandum. Before turning to the discussion of statutes of limitations, the defense will first discuss MEJA more thoroughly.

IV.     **MEJA, Generally.**

The two most commonly-discussed examples of extraterritorial application of criminal law are the Uniform Code of Military Justice (which applies to offenses committed by active duty members of the U.S. Armed Forces, wherever located, and is *not* at issue in this case) and MEJA.

In 2000, Congress enacted MEJA. 18 U.S.C. §§ 3261-67. MEJA created a new federal offense, to wit, engaging in conduct outside the U.S. that would constitute a felony if it occurred within the U.S., as long as the accused is employed by or accompanying Armed Forces outside the U.S. at the time of the offense conduct[3]  18 U.S.C. §§ 3261(a)(1), 3267(2). Congress gave no indication that this new federal offense was not governed by the general five year statute of limitations for federal felonies. MEJA further states that those who engage in such conduct should be punished according to the parameters of the applicable U.S. statute.

In other words, MEJA imposes U.S. criminal law in locations abroad that it would not normally apply if *inter alia* the accused was a civilian employee of the Department of Defense at the time. Mr. Gordon was such a person during the relevant time periods; however, the charges against Mr. Gordon must be brought within the timeline dictated by the applicable statute of limitations for the prosecution to be proper. This is precisely where the indictment fails.

V.     **Case Law Regarding Which Statute of Limitations Applies in MEJA Cases.**

MEJA is a rarely-utilized statute,[4] and the defense is not aware of any case law that

---

[3] MEJA also applies to members of the Armed Forces, subject to the concurrent jurisdiction of the Department of Defense under the Uniform Code of Military Justice. 18 U.S.C. § 3261(a)(2), (c), (d). Mr. Gordon was no longer an active duty military member at the time of these allegations, so this is not at issue here.

[4] "Any prosecution at all under MEJA is rare: As of July 30, 2010, only 116 potential MEJA cases had been referred to the DOJ, and only 35 were prosecuted." *United States v. Santiago*, 966 F.Supp 2d 247 (S.D.N.Y. 2013).

discusses which statute of limitations applies to MEJA prosecutions, and therefore the arguments raised herein appear to be a matter of first impression.

As discussed above, MEJA provides that qualifying offenses committed outside the U.S. by qualifying individuals "shall be punished as provided for that offense." 18 U.S.C. § 3261(a). This language incorporates the charging statute's elements and penalties, but it does *not* incorporate the same statute of limitations that would have applied if the conduct had occurred in the U.S. This is because the statute of limitations is *not* an element of the offense. *United States v. Johnston*, 699 F. Supp. 226 (N. D. Cal. 1998). Rather, the statute of limitations is *inter alia* an important due process consideration that must be met for a prosecution to be valid.

As argued below, conduct prosecuted under MEJA utilizes the general federal statute of limitations, which is five years. Should the Court agree with the defense's argument, then Counts 2-4 must be dismissed, as all three were charged well after the expiration of the five year statute of limitations, as summarized in the below chart:[5]

| Count | Date of Allegations | Expiration Date of 5-Year Statute of Limitations | Date First Charged |
|---|---|---|---|
| 1 | April 26, 2017 | April 26, 2022 | October 14, 2021 |
| 2 | June 01, 2003 to October 05, 2005 | September 30, 2010 | October 14, 2021 |
| 3 | September 30, 2004 to September 30, 2006 | September 30, 2011 | June 09, 2022 |
| 4 | January 01, 2003 to December 31, 2008 | December 31, 2013 | June 09, 2022 |

The next section will provide additional details about the different federal statutes of limitations before arguing why the general statute of limitations is the only one applicable in MEJA cases such as the instant one.

/

//

---

[5] The defense anticipates the government may argue that the statute of limitations for Counts 2-4 did not begin to run until Witness 2 (to whom all these counts relate) first reported the alleged conduct. This argument would fail because the language of 18 U.S.C. § 3282 does not provide for an exception where an alleged crime is undiscovered. Regardless, the argument would fail on the facts of this case because the government's position is that Witness 2 first reported her allegations in or around 2005, and even if the five-year statute of limitations did not begin to run until that time (when the alleged offense was discovered or should have been discovered), the limitations period ended well before the indictment was filed.

VI.     **Federal Statutes of Limitations: 18 U.S.C. §§ 3282, 3283, and 3299.**

    A.     **The General Statute, 18 U.S.C. § 3282.**

The general statute of limitations at 18 U.S.C. § 3282 has its roots in an 1876 statute and stated in its original form that:

> No person shall be prosecuted, tried, or punished for any offense, not capital…unless the indictment is found, or the information is instituted within three years next after such offense shall have been committed.

R.S. 1044, 19 Stat. 32, ch. 56 (Apr. 11, 1876).

In 1954, it was amended to increase the time period from three years to the current five years. 68 Stat. 1145 §10(a) (Sept. 03, 1954) (18 U.S.C. § 3282 is "amended by striking out 'three' and inserting in lieu thereof 'five.'"). The current version, which applies to federal, non-capital offenses such as those charged in this case, reads:

> Except as otherwise expressly provided by law, no person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found or the information is instituted within five years next after such offense shall have been committed.

Two sections[6] of Title 18 potentially provide exceptions to this general rule under the "[e]xcept as otherwise expressly provided by law" language: §§ 3283 and 3299. The defense anticipates the government will argue that the indictment and superseding indictment were filed within the statute of limitations based on § 3283 and/or § 3299. In the interest of efficiency, those anticipated arguments are addressed below.

    B.     **Section 3283's Special Statute of Limitations.**

In 1990, Congress enacted § 3283, which extended the statute of limitations in cases involving sexual or physical abuse of a juvenile until the alleged victim reached 25 years of age. 18 U.S.C. § 3509(k) (1991). This language does *not* reference extraterritorial application.

In 1994, the text of that statute was recodified at 18 U.S.C. § 3283, but the substance remained unchanged. It provided that:

> No statute of limitations that would otherwise preclude prosecution for an offense involving the sexual or physical abuse of a child under

---

[6] There are numerous other federal statutes of limitations for non-capital offenses ranging from one year to twenty years; as they are irrelevant to the instant case, they are not detailed herein.

> the age of 18 years shall preclude such prosecution before the child
> reaches the age of 25 years.

It was this version that was in effect at the beginning of the alleged conduct in this case (which began on January 01, 2003). On April 30, 2003, this statute was amended to its current version, which provides:

> No statute of limitations that would otherwise preclude prosecution for an offense involving the sexual or physical abuse<u>, or kidnaping,</u> of a child under the age of 18 years shall preclude such prosecution <u>during the life of the child, or for ten years after the offense, whichever is longer.</u>

*Id*. (changes underlined). No iteration of this statute speaks to extraterritorial application.

    **C.**    **Section 3299's Special Statute of Limitations.**

Section 3299 was enacted for the first time on July 07, 2006. Pub. L. 109-248, title II, § 211(1). It provides in pertinent portion that:

> Notwithstanding any other law, an indictment may be found or an information instituted at any time without limitation…for any felony under chapter 109A….

All counts in the charging documents fall under Title 18, Chapter 109A. However, the statute does not call for its extraterritorial application, and is additionally not retroactive.

**VII.**    **Argument: The General Statute of Limitations Controls MEJA Prosecutions.**

The very purpose behind enacting the general, five-year statute of limitations was to render it applicable to all non-capital federal offenses, unless i) Congress expressly provides otherwise by law and ii) the alternate provision is constitutional. Here, Congress has *not* expressly provided by law that another statute of limitations applies to MEJA prosecutions, and even if Congress were to do so, such action would be an unconstitutional infringement of the Fifth Amendment Due Process rights of civilian criminal defendants so charged.

    **A.**    **Nothing in § 3283 or § 3299 Speaks to Extraterritorial Application.**

As detailed in Section III, *supra*, a prerequisite to applying a statute (including a special statute of limitations such as §§ 3283 or 3299) extraterritorially is clear Congressional intent to do so. No such intent is evident in the language of §§ 3283 or 3299, nor in any contemporaneous Congressional action. Therefore, these statutes should not be construed to apply extraterritorially

to cases prosecuted under MEJA.

### B. Due Process Requires the Application of the General Statute of Limitations.

By definition, cases prosecuted under MEJA involve conduct occurring outside the United States. 18 U.S.C. § 3261(a) ("[w]hoever engages in conduct outside the United States…"). This raises special due process considerations, particularly in cases such as the instant one, where the alleged crime scenes are U.S. military bases that U.S. citizen civilians were living on.

Due process, at its core, speaks to fairness and equity, particularly in criminal prosecutions when the individual faces the full weight and force of the United States federal government. This is even more crucial in prosecutions such as the instant one, where the government waits years after allegations of abuse were disclosed to bring forth a prosecution. Delays in this context are especially devastating to criminal defendants, whose defense may require expensive travel to foreign countries and clearances to enter U.S. military bases where the alleged acts occurred, locating witnesses who have long-since moved on, and recollection of details of events that transpired years before.

In addition, given the nature of the personnel at these locations, exculpatory witnesses are much more likely to move frequently, be unavailable due to military service, or reside abroad, outside the reach of the Court's subpoena power. Against this backdrop, which is particular to civilians prosecuted under MEJA, it would be an unconstitutional violation of due process to allow the application of the statutes of limitations at 18 U.S.C. §§ 3283 or 3299 in MEJA prosecutions of civilians, as both statutes allow for the prosecution of offenses for an indeterminant number of decades, which violates due process in this context.[7]

As noted earlier, this argument appears to be one of first impression. However, another district court has grappled with this issue in the context of an analogous statute, the Assimilative Crimes Act ("ACA").

The ACA (codified at 18 U.S.C. § 13) essentially provides that those who commit an offense on federal land that would have constituted a state offense, had it been committed in the

---

[7] For example, 18 U.S.C. § 3283's time limitation is "the life of the child, or for ten years after the offense, whichever is longer." It is entirely possible that a case could be brought fifty years after the alleged offense under this statute. Section 3299 is even more unbridled, allowing for prosecution "at any time without limitation."

state's territory surrounding the federal land, are guilty of a federal offense. For example, driving with a Blood Alcohol Concentration of 0.08% in Yosemite National Park would be a violation of federal law, even though the elements of the offense are incorporated from California's Vehicle Code. It is thus similar to MEJA in that both statutes serve as a gap-fill criminal code that applies laws outside the territorial jurisdiction of the legislative body that enacted the law.

Just like with MEJA, there are very few cases (none of which are precedent for this Court) that discuss the statute of limitations that is applicable to the ACA. One such case is *United States v. Johnson*, out of the Northern District of California. 699 F. Supp. 266 (N.D. Cal. 1988).

In *Johnson*, the accused was charged with committing a sexual battery (Cal. P.C. § 243.4) on federal land. The defendant was charged more than three years after the offense, but less than five years afterwards. He argued that his case should be dismissed because the assimilated statute (Cal. P.C. § 243.4) has a three-year statute of limitations. *Id*. at 228.

The district court rejected that argument, rationalizing that offenses prosecuted under the ACA become federal offenses, and are not federal enforcement of state law. *Id*. As such, the federal offense "refers to the California statutes for its definition and its penalty, but it does not incorporate the whole criminal and constitutional law of California. *Id*. (citing *Smayda v. United States*, 352 F.2d 251, 253 (9th Cir. 1965, *cert. denied*, 382 U.S. 981 (1966))). The district court went on to reason that "'federal courts are not required to follow specific provisions of state law which go beyond establishing the elements of an offense and the range of punishment.'" *Id*. at 228-29 (citing *United States v. Sain*, 795 F.2d 888, 890 (10th Cir. 1986)). Relying on U.S. Supreme Court precedent, the district court went on to state that the "statute of limitations is not an element of the offense," and further stated that Congress has enacted a general statute of limitations, and this is a clear expression of legislative policy indicating that the general statute of limitations should apply to the ACA.

Though the *Johnson* case is a district court opinion about a different statute, there are sufficient similarities between the ACA and MEJA, such that this district court's reasoned opinion can provide guidance on this issue of first impression. Here, as in *Johnson*, Congress' enactment of a general statute of limitations should be assumed to control.

The enactment of a general statute of limitations is a clear indication that Congress intends the five-year period to apply to all non-capital federal offenses, unless different legislation makes it clear that they intend otherwise. While §§ 3283 and 3299 were enacted after § 3282, nothing in the language of the former two indicates that Congress intended their reach to extend extraterritorially. Additionally, due process considerations would have rendered any such reach unconstitutional, and it is a settled rule of statutory interpretation that when courts can interpret a statute in two ways, one of which would render the statute unconstitutional, courts should opt for the interpretation that avoids that unconstitutionality.

### C.  The General Statute of Limitations Controls Here.

In short, the general statute of limitations controls MEJA prosecutions. However, even if the Court disagrees, there are several additional arguments against the application of §§ 3283 and 3299 in this case. There are detailed next.

### VIII.  Argument: Additional Considerations Blocking Application of § 3283 and § 3299.

#### A.  Section 3283 is Inapplicable to Counts 3 and 4 Because They Do Not Involve Abuse of a Child.

As noted above, in both the 1994 version and current version of § 3283, Congress expressly stated that this extended statute of limitations only applies to offenses "involving…a child under the age of 18 years…." Neither Count 3 nor Count 4 involves a child, as detailed below. Therefore, even if the Court finds that the 5-year statute of limitations is not applicable to Counts 3 and 4, the government cannot rely on § 3283's statute of limitations to salvage these counts.

#### B.  "Essential ingredients" of an offense.

When determining whether an offense "involves" a necessary element for statute of limitations purposes, courts look to the statutory definition of the offense, not the indictment. *Bridges v. United States*, 346 U.S. 209, 222-23 (1953). In *Bridges*, the government charged the petitioner with making a false statement in his naturalization petition. His prosecution was barred by the general statute of limitations, but an exception to that rule (put in place by the Wartime Suspension of Limitations Act) extended the statute of limitations for offenses "involving the defrauding of the United States," and the government proceeded against him on that basis.

In ruling for the petitioner, the Supreme Court held that the extended statute of limitations did *not* apply to the petitioner's case because the charged offense did not "involve the defrauding of the United States." Specifically, the Court held that the extended period did not apply to the petitioner's offense because defrauding the United States was not an essential element of the crime he was charged with. *Id*. at 221-22. Making a false statement in a nationalization petition can be accomplished without committing fraud. *Id*. The fact that the crime is usually accomplished by fraud is irrelevant when the crime can be accomplished without fraud, and thus, defrauding the U.S. is not an essential element. *Id*.

In response to the government's arguments, the Court went on to emphasize that the fact that the indictment alleged that the petitioner obtained naturalization "by fraud" does not change their analysis, because it is not the indictment's language that controls, but rather, the charged statute's language. *Id*. at 222-23.

    **C.**    **A Child Victim Is Not an Essential Element of Count Three.**

Applying the *Bridges* Court's analysis here, 18 U.S.C. § 3283 cannot be used to extend the statute of limitations unless an essential element of the charged crime is conduct against a child. This is *not* the case for Counts Three and Four. Count Three alleges a violation of 18 U.S.C. § 2241(a)(1). Section 2241(a)(1) states:

> Whoever, in the special maritime and territorial jurisdiction of the United States…knowingly causes another person to engage in a sexual act [] by using force against that other person [] shall be fined under this title, imprisoned for any term of years or life, or both.

Nothing in the statute requires the alleged victim to be a child, and therefore, that is not an essential element of the offense, rendering 18 U.S.C. § 3283 inapplicable. As the *Bridges* Court made clear, it is irrelevant that the alleged conduct at issue in this count occurred when Witness 2 was a child, because it is not the language of the indictment that is dispositive, but the statute itself.

    **D.**    **A Child Victim Is Not an Essential Element of Count Four.**

Court Four alleges a violation of 18 U.S.C. § 2242(1), which reads:

> Whoever, in the special maritime and territorial jurisdiction of the United States…knowingly causes another person to engage in a sexual act by threatening or placing that other person in fear (other than by threatening or placing that other person in fear that any person will be subjected to death, serious bodily injury, or

> kidnapping)… or attempts to do so, shall be fined under this title and imprisoned for any term of years or for life.

Here again, nothing in the statute requires the alleged victim to be a child, and therefore, that is not an essential element of the offense, rendering 18 U.S.C. § 3283 inapplicable. As with Count Three, it is irrelevant that the alleged conduct at issue in this Count Four potentially occurred when Witness 2 was a juvenile,[8] because it is not the language of the indictment that is dispositive, but the statute itself, which makes no mention of the age of victims.

In short, neither 18 U.S.C. § 3282 nor 18 U.S.C. § 3283 allows the government to extend the statute of limitations for Counts Three and Four to June 09, 2022 (when those counts were first charged). Therefore, even if the Court rejects the defense's arguments that the five-year statute of limitations is controlling in this case, if 18 U.S.C. § 3299 does not extend the statute of limitations to June 09, 2022, then Counts Three and Four must be dismissed.

**E.      Section 3299 Should Be Inapplicable to Counts Three and Four Because It Is Not Retroactive.**

**i.      Section 3299 Does Not Allow Retroactive Application.**

Title 18, section 3299 was created by § 211 of the Adam Walsh Child Protection and Safety Act of 2006. Pub. L. 109-248, title II, § 211(1). Nothing in that provision states that it applies retroactively to conduct predating its enactment on July 07, 2006. This is telling, because when Congress intends for new legislation to apply retroactively, it does so explicitly. *See e.g.* Military Justice Act of 2016, Pub. L. No. 114-328, § 5225(f), 130 Stat. 2000, 2910 ("[t]he amendments made [to Article 43(b)] shall apply to the prosecution of any offense committed before, on, or after the date of the enactment of this subsection if the applicable limitation period has not yet expired"); *see also* Crime Control Act of 1990, Pub L. No. 101-647, § 2505(b), 104 Stat. 4789, 4861 ("[t]he amendments…shall apply to any offense committed before the date of the enactment of this section, if the statute of limitations applicable to that offense had not run as of such date.").

Indeed, this is so clear a proposition that the government has conceded in unrelated litigation that § 3299 does not apply retroactively to conduct occurring before its enactment on

---

[8] Count Four spans a six year period; during most of that time, the alleged victim was a juvenile. It is unclear whether the indictment is alleging conduct that spans that entire time frame or not, and therefore, it is possible that the alleged victim was an adult at the time the alleged conduct at issue in Count Four is said to have occurred.

July 27, 2006. *See United States v. Richardson*, 512 F.2d 105, 106 (3d Cir. 1975) (explaining a law extending a statute of limitations period is "presumed to operate prospectively in the absence of a clear expression to the contrary"); *United States v. Schneider*, 2010 U.S. Dist. LEXIS 97695, at 3, fn. 1 (E.D. Pa. Sept. 15, 2010), aff'd, 801 F.3d 186 (3d Cir. 2015).

As the Third Circuit held in *Richardson*, when deciding whether a new statute of limitations provision applies to conduct that occurred before it was enacted:

> The question is one of ascertaining congressional intent….Criminal statutes of limitations, however, are to be interpreted in favor of repose. *Toussie v. United States*, 397 U.S. at 115, 90 S.Ct. 858. Moreover, a law is presumed to operate prospectively in the absence of a clear expression to the contrary. *Hassett v. Welch*, 303 U.S. 303, 314, 58 S.Ct. 559, 82 L.Ed. 858 (1938).

*United States v. Richardson*, 512 F.2d 105, 106 (3d Cir. 1975). There is no evidence of such intent here, and therefore, § 3299 cannot be applied retroactively.

Finally, Fifth Amendment Due Process considerations require dismissal of charges where the indictment alleges that an offense occurred during a time span that is both within and outside the applicable statute of limitations.[9]

### ii. Section 3299 Was Enacted Well into the Relevant Time Period of Counts Three and Four.

The alleged conduct in Counts Three and Four occurred in overlapping time periods (from September 30, 2004 to September 30, 2006, and from January 01, 2003 to December 31, 2008, respectively). Section 18 U.S.C. § 3299 was enacted for the first time on July 07, 2006. Pub. L. 109-248, title II, § 211(1). It provides in pertinent portion that:

> Notwithstanding any other law, an indictment may be found or an information instituted at any time without limitation…for any felony under chapter 109A….

All counts in the charging documents fall under Title 18, Chapter 109A.

First, even after a complete review of the discovery, the defense is unaware if the alleged conduct in Counts Three and Four occurred over the entirety of the indicated date range, or just in a subset. Second, any conduct from these counts that is alleged to have occurred before July 07, 2006 must be dismissed, because there was no applicable statute of limitations period running

---

[9] This argument also appears to be one of first impression, and is raised herein to preserve the issue. The defense is not aware of any case law in support of this argument.

when § 3299 was enacted,[10] and section 3299 does not allow for retroactive application. This almost certainly eliminates Count Three, as the conduct timeframe for that count was over 90% complete by the time § 3299 was enacted.

## IX. Conclusion.

For the below-detailed reasons, Mr. Gordon moves this honorable Court to dismiss Counts Two, Three, and Four of the superseding indictment under Federal Rule of Criminal Procedure 12(b)(1).

Respectfully submitted,

HEATHER E. WILLIAMS
Federal Defender

Date: September 28, 2023

/s/ Christina Sinha
CHRISTINA SINHA
MEGAN T. HOPKINS
Assistant Federal Defenders
Attorneys for Defendant
LINWOOD HOSEA GORDON

---

[10] As noted above, as it relates to Counts Three and Four: i) the statute of limitations under 18 U.S.C. § 3282 expired on September 30, 2011 and December 31, 2013, respectively; and ii) section 3283 is inapplicable because neither count contains a prerequisite essential element for the application of section 3283.