1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   UNITED STATES OF AMERICA,              No.  2:21-cr-00197-DJC

12                    Plaintiff,

13          v.                              ORDER

14   LINWOOD HOSEA GORDON,

15                    Defendant.

16

17          Plaintiff is presently charged with four counts: (1) abusive sexual contact in

18   violation of 18 U.S.C. § 2244(b); (2) sexual abuse of a minor in violation of 18 U.S.C.

19   § 2243; (3) aggravated sexual abuse in violation of 18 U.S.C. § 3261; and (4) sexual

20   abuse in violation of 18 U.S.C. § 2242(1).  (Superseding Indictment (ECF No. 33) at 3–

21   4.)  Defendant has filed a Motion to Dismiss Counts Two, Three, and Four of the

22   Superseding Indictment.  (ECF No. 89.)  Defendant's motion largely argues that the

23   statute of limitations on these charges should be the standard five years under 18

24   U.S.C. § 3282 and that the special statutes of limitations under 18 U.S.C. § 3283 and

25   18 U.S.C. § 3299 should not apply to these charges as they were brought under the

26   Military Extraterritorial Jurisdiction Act of 2000 ("MEJA").

27   ////

28   ////

                                          1

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**BACKGROUND**

Plaintiff was originally charged in a two-count indictment on October 14, 2021. (ECF No. 1.)  A superseding indictment including the four charges identified above was later filed on June 9, 2022.  (ECF No. 33.)  All four counts charged in this superseding indictment were brought against Defendant under the jurisdiction provided by 18 U.S.C. § 3261, a portion of the MEJA.  (*Id.*)  Section 3261 generally provides for the prosecution under federal law of individuals who are employed by, accompanying, or a member of the Armed Forces while outside the United States, with some exceptions.  *See* 18 U.S.C. § 3261(a).  Defendant was charged partially under section 3261 because, at the time of the charged offenses, Defendant was allegedly employed by the Armed Forces and was working outside the jurisdiction of the United States.  (ECF No. 33 at 2.)  During the period in question in Count One, Defendant was allegedly employed by the Department of Defense at Guantanamo Bay Naval Station in Guantanamo Bay, Cuba and during the events at issue in Counts Two, Three, and Four, he was allegedly employed by the Department of the Navy at two different locations in Japan.  (*Id.*)  Counts Two through Four involve events that allegedly occurred on dates ranging between January 1, 2003 and December 31, 2008, with the incident in Count One occurring on or about April 26, 2017.  (*Id.* at 3–4.)

**LEGAL STANDARD**

Under Federal Rule of Criminal Procedure 12(b) a "party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits."  Fed. R. Crim. P. 12(b)(1).  On a motion under Rule 12(b), the Court may consider whether the charges are timely under the applicable statute of limitations. *United States v. Nukida*, 8 F.3d 665, 669 (9th Cir. 1993).  The Court is bound by the "four corners" of the indictment, and "must accept the truth of the allegations in the indictment in analyzing whether a cognizable offense has been charged."  *United States v. Boren*, 278 F.3d 911, 914 (9th Cir. 2002).

**DISCUSSION**

**I.     Arguments Raised in Motion to Dismiss for Preservation Purposes**

Defendant's motion includes a number of different arguments for dismissing Counts Two through Four.  Within these are several arguments raised expressly for the purpose of preserving those issues for appeal including: (1) "[the] MEJA exceeds the scope of Congress' enumerated powers, and as such, the government does not have the authority to prosecute [Defendant], as [the] MEJA is the only jurisdictional statute noticed in the indictment[,]" (2) "[t]he extraterritorial application of the criminal offenses charged in the superseding indictment via [the] MEJA violates general principles of international law, such that such prosecutions are unlawful[,]" and (3) "Fifth Amendment Due Process considerations require dismissal of charges where the indictment alleges that an offense occurred during a time span that is both within and outside the applicable statute of limitations."  (Def.'s Mot. at 3, 13.)  As Defendant recognizes in his motion, these arguments have either been rejected by other courts or lack any support in other cases.  The Court recognizes these arguments but declines to dismiss the identified counts based on these grounds.  Given that neither party discussed any of these arguments further in their motions or at oral argument, the Court will not address them further within this order.

**II.    Appropriate Statute of Limitations under the MEJA**

Defendant argues that the extension of federal law via the MEJA does not incorporate all the statutes of limitations for these offenses as the statutes of limitations are not an element of the offenses themselves.  (Def.'s Mot. at 6–7.)  In Defendant's view, the MEJA does not simply extend federal jurisdiction but creates new criminal offenses based on existing federal criminal offenses.  Thus, the MEJA incorporates "the charging statute's elements and penalties" but not the statute of limitations that would apply to a given charge as the statute of limitations is not an element of the offense.  (*Id.*)  As a result, Defendant claims that the statutes of limitations in question must themselves apply extrajudicially in order to cover Charges

1  Two through Four.  (*Id.*)  Defendant argues that the special statutes of limitations in 18

2  U.S.C. §§ 3283 and 3299 fail this requirement so the basic five-year statute of

3  limitations from 18 U.S.C. § 3282 should apply.

4        Despite Defendant's contention to the contrary, the Government correctly

5  argues that the MEJA does not create new offenses.  Instead, the Ninth Circuit has

6  identified that the purpose and function of the MEJA is to extend federal jurisdiction

7  outside the United States to those it covers.  *U.S. v. Arnt*, 474 F.3d 1159, 1161 (9th Cir.

8  2007) ("[The] MEJA creates federal jurisdiction over those who commit felonies while

9  'accompanying the Armed Forces outside the United States.'"); *see also United States*

10  *v. Martin*, 555 F. Supp. 3d 821, 826 (D. Ariz. 2021) (rejecting a defendant's argument

11  that conduct should be charged as a violation of the MEJA, not as a violation of the

12  charge under its original federal statute and stating that the MEJA "does not purport

13  to create a new crime, and it does not set forth the elements of a new offense.").  This

14  directly contradicts Defendant's claim that the MEJA is not a jurisdictional statute.

15        The text of MEJA confirms that it extends federal jurisdiction over criminal

16  offenses, not that it creates separate offenses.  The MEJA states that where an

17  individual covered by the act engages in conduct outside the United States that would

18  constitute a felony offense had the conduct occurred within the jurisdiction of the

19  United States, that individual "shall be punished as provided for that offense."  18

20  U.S.C. § 3261.  Contrary to Defendant's assertion, nothing in the statutory language of

21  the MEJA indicates that it only extends the *elements* of offenses internationally.  The

22  language "punished as provided for that offense" is exceedingly broad and would

23  seem to incorporate the whole scheme of punishment for any given offense.  It stands

24  to reason that federal statutes establishing the relevant statutes of limitations must

25  also be extended internationally.  Otherwise, for individuals who committed offenses

26  that occurred outside the general statute of limitations, the federal government would

27  be unable to punish those individuals "as provided for that offense" in the same

28  manner as if the conduct had occurred in the territorial jurisdiction of the United

1    States.  Nothing in section 3261 suggests that Congress intended to limit application

2    of the MEJA in this manner.

3         Defendant's comparison of the MEJA to the Assimilative Crimes Act on this

4    point is unpersuasive.  The Assimilative Crimes Act provides for the application of

5    state laws to acts committed on federal land.  18 U.S.C. § 13.  It does so by expressly

6    providing that it creates a "like offense" and sentences those found guilty to a "like

7    punishment" to the punishment found in state law.  As other courts have noted, the

8    Assimilative Crimes Act clearly *creates* federal offenses based on existing state law.

9    *See Smayda v. United States*, 352 F.2d 251, 253 (9th Cir. 1965).

10        As the Assimilative Crimes Act gives the federal government the ability to make

11   use of state criminal statutes, this necessitates a way to incorporate those state

12   offenses as they do not otherwise exist under federal law.  *Id.*  As the court noted in

13   *United States v. Johnson*, 699 F. Supp. 226 (N.D. Cal. 1988), this raises the question of

14   how much state law a federal district court must incorporate.  *Johnson*, relying on the

15   Ninth Circuit decision in *Smayda*, noted that while the Assimilative Crimes Act "refers

16   to the California statutes for its definition and its penalty . . . it does not incorporate the

17   whole criminal and constitutional law of California."  *Johnson*, 699 F. Supp. at 228

18   (quoting *Smayda*, 352 F.2d at 253).  The Court in *Johnson* concluded that since a

19   state statute of limitations was not an element of the state offense, it was not

20   incorporated into federal law.  *Id*. at 229.  Given that federal law had no statute of

21   limitations for an incorporated state offense, the court looked to the general statute of

22   limitations in 18 U.S.C. § 3282.

23        Unlike the Assimilative Crimes Act, under the MEJA there is no need to

24   determine how much federal law to incorporate to adjudicate *federal* offenses, as

25   those offenses already exist within federal law.  Instead, the MEJA simply extends the

26   federal government's jurisdiction to apply already extant federal statutes.  *See Arnt*,

27   474 F.3d at 1161.  As such, the MEJA cannot be properly compared to the

28   Assimilative Crimes Act as interpreted in *Johnson*.

Given that the MEJA extends the jurisdiction of the United States government to those accompanying the Armed Forces outside the United States, any statutes of limitations under federal law still apply to charges brought under the jurisdiction provided by the MEJA.  Thus, Defendant is subject not only to the standard five-year statute of limitations under 18 U.S.C. § 3282, but any applicable special statutes of limitations such as 18 U.S.C. § 3283 and 18 U.S.C. § 3299.  Given that the MEJA effectively incorporates the statutes of limitations in 18 U.S.C. § 3283 and 18 U.S.C. § 3299, the Court need not reach the question of whether either applies extraterritorially on their own terms.[1]

### III.     Application of 18 U.S.C. § 3299 to Counts Three and Four

Defendant argues that the special statute of limitations in section 3299 should not apply to Counts Three and Four of the indictment because section 3299 was enacted while the alleged acts at issue in these counts were occurring, or had already occurred, and section 3299 "does not allow retroactive application." (Def.'s Mot. at 12–14.)  Defendant appears to concede that section 3299 would properly apply but for their retroactivity argument.  Indeed, it seems readily apparent that Counts Three and Four would otherwise fall within section 3299 as Count 3 is a charge of aggravated sexual abuse in violation of 18 U.S.C § 2241(a)(1), and Count 4 is a charge of sexual abuse in violation of 18 U.S.C. § 2242(1).  (Superseding Indictment at 3–4.)  These are both charges to which 18 U.S.C. § 3299 applies.  Instead, Defendant argues that the special statute of limitations should not apply based on the lack of a retroactivity provision in section 3299 and the timing of its enactment in relation to Counts Three and Four.

The statute of limitations provided by 18 U.S.C. § 3299 was enacted on July 7, 2006.  *See* 18 U.S.C. § 3299.  As charged in the superseding indictment, Counts Three

---

[1] The Court does note that Defendant's argument on this point is self-defeating.  Like sections 3283 and 3299, 18 U.S.C. § 3282 also contains no language expressly permitting its extraterritorial application.  Defendant presents no argument as to why the general statute of limitations is exempt from this requirement where sections 3283 and 3299 are not.

and Four occurred between September 30, 2004 and September 30, 2006, and between January 1, 2003 and December 31, 2008, respectively. (*See* Superseding Indictment at 3-4.)  In his motion, Defendant correctly identifies that given the dates, as charged, the general statute of limitations under section 3282 would have expired on September 30, 2011, as to Count Three and December 31, 2013, as to Count 4. (Def.'s Mot. at 14 n.10.)  As such, section 3299 was enacted well before the standard five-year statute of limitations had run.  Defendant notes that it is unclear exactly when the alleged conduct occurred within the date ranges provided by the superseding indictment.  (Def.'s Mot. at 13-14.)  However, even taking just the first date of the range provided for each charge (September 30, 2004, as to Count Three and January 1, 2003, as to Count Four), section 3299's enactment in mid-2006 would still have occurred before section 3282's five-year statute of limitations had run on either charge.

Some courts have considered whether a new statute of limitations can apply to acts prior to the new statute's enactment in the context of whether it would violate the Ex Post Facto Clause of the Constitution.  *See United States v. Chief*, 438 F.3d 920, 924–25 (9th Cir. 2006) (discussing whether retroactive application of the 2003 amendment of 18 U.S.C. § 3283 to crimes committed before the prior statute of limitations had run violated the Ex Post Facto Clause), *United States v. Jeffries*, 405 F.3d 682, 684 (8th Cir. 2005) (discussing whether 18 U.S.C. § 3509(k) and subsequently 18 U.S.C. § 3283 could apply where the five-year statute of limitations under 18 U.S.C. § 3282 had not yet run when 18 U.S.C. § 3509(k) was enacted).  In these cases, the courts in question found that where a newly enacted law extends the statute of limitations period, prosecution of crimes committed before the new statute of limitations was enacted did not violate the Ex Post Facto Clause so long as the new statute was enacted before the prior applicable statute of limitations had run.  *Chief*, 438 F.3d at 924–25; *see Jeffries*, 405 F.3d at 685 ("The law is well settled that extending a limitation period before prosecution is barred does not violate the ex

7

post facto clause."); *see also See United States v. Shapiro*, No. 2:15-cr-00224-DMG-1, 2017 WL 11593371, at *1–2 (C.D. Cal. 2017) (applying the finding in *Chief* to charges brought under section 3299).  Here, even when taking the earliest possible date within the ranges provided for Counts Three and Four, the five-year statute of limitations provided by 18 U.S.C. § 3282 had not yet run by the time 18 U.S.C. § 3299 was enacted.  Thus, applying section 3299 to Counts Three and Four does not violate the Ex Post Facto Clause.

Other courts have considered this issue in the context of retroactivity under *Landgraf v. USI Film Products*, 511 U.S. 244 (1994), which used principles of statutory interpretation to determine whether a provision of the Civil Rights Act of 1991 applied retroactively to a case pending on appeal.  *See United States v. Piette*, 45 F.4th 1142, 1160 (10th Cir. 2022) (applying the *Landgraf* analysis to determine whether section 3299 should apply to alleged crimes that occurred before section 3299 was enacted but the prior statute of limitations had not yet run.)  In both the Eleventh and Ninth Circuit, the *Landgraf* analysis involves two-steps.  *See Garcia-Ramirez v. Gonzales*, 423 F.3d 935, 939 (9th Cir. 2005); *see also Piette*, 45 F.4th 1160.  First, the court determines whether Congress expressed clear intent that the law should apply retroactively and, if there is no clear intent, the court then considers whether the new statute would have a retroactive effect, such as increasing a party's liability or impairing their rights.  *See Garcia-Ramirez*, 423 F.3d at 939; *see also Piette*, 45 F.4th 1160.

If Defendant's argument is that section 3299 cannot apply retroactively such that the *Landsgraf* analysis is more appropriate, the Eleventh Circuit's decision in *Piette*, while not binding, is highly informative and persuasive.  45 F.4th 1142. Applying the first *Landgraf* step, the Eleventh Circuit in *Piette* found that there was no express indication of Congress' intent as to the temporal reach of section 3299. *Piette*, 45 F.4th 1160–61.  Turning to the second step of the *Landsgraf* analysis, the court found that because the previous statute of limitations had not run at the time

1  section 3299 was enacted, imposition of the statute of limitations did not create an

2  impermissible retroactive effect.  *Id.* at 1162.

3       The Court adopts that same analysis here, finding that while it is unclear

4  whether Congress intended section 3299 to apply retroactively, applying that statute

5  of limitations to Counts Three and Four would not create a retroactive effect given that

6  the statute of limitations under 18 U.S.C. § 3282 had not yet run.  Thus, section 3299

7  did not increase exposure to prosecution retroactively, raise the penalty for the

8  charged offense, re-define the offense to make it easier to establish, or expose

9  Defendant to criminal prosecution anew.  *Piette*, 45 F.4th at 1161–62.  Because

10  application of section 3299 does not have a retroactive effect, the "traditional

11  presumption" that it does not apply "absent clear congressional intent favoring such a

12  result" is inapplicable, and the Court need not look for such intent.  *Id*. at 1160, 1162

13  (citing *Landgraf*, 511 U.S. at 280).

14       Defendant also briefly raises an argument that "Fifth Amendment Due Process

15  considerations require dismissal of charges where the indictment alleges that an

16  offense occurred during a time span that is both within and outside the applicable

17  statute of limitations."  (Def.'s Mot. at 13.)  This ground is expressly raised in the

18  motion for preservation purposes.  (*Id.* at 13 n.9.)  At oral argument, Defendant's

19  counsel appeared to indicate that this issue was at the core of their argument.

20  However, counsel also expressly stated that they did not have a citation to support

21  their contention and the filed motion does not contain this argument as anything

22  more than a single sentence.  Despite the many courts addressing the retroactive

23  application of statutes of limitations, including those discussed previously, the Court is

24  unaware of any case where a court indicated that charging an offense that occurred

25  "both within and outside the statute of limitations" is a violation of due process rights.

26  More importantly, as the Court finds above, Counts Three and Four were properly

27  charged under the special statute of limitations in 18 U.S.C. § 3299 as it was enacted

28  before the general statute of limitations under 18 U.S.C. § 3282 had run.  Neither

1   Count Three nor Count Four occurred both within and outside the statute of

2   limitations in question.  Thus, the possible due process violation Defendant raises is

3   not at issue here and is not before the Court.

4         As such, Counts Three and Four were timely brought under the special statute

5   of limitations provided by 18 U.S.C. § 3299.  Defendant's motion to dismiss these

6   Counts is thus denied.[2]

**CONCLUSION**

8         In accordance with the above, IT IS HEREBY ORDERED that Defendant's Motion

9   to Dismiss (ECF No. 89) is DENIED.

12        IT IS SO ORDERED.

13  Dated:   __**October 25, 2023**__                 _Daniel J. Calabretta_

14                                     Hon. Daniel J. Calabretta
                                   UNITED STATES DISTRICT JUDGE

DJC1 – gordon21cr00197.mtd

---

[2] As Counts Three and Four were timely filed under 18 U.S.C. § 3299, the Court need not reach the question of whether the statute of limitations under 18 U.S.C. § 3283 properly applies.  At oral argument, the parties appeared to indicate that section 3283 would be necessary for section 3299 to apply.  However, as discussed in the analysis above, section 3299 was enacted while the general statute of limitations under section 3282 was still running.  Thus, application of section 3283 is not necessary to establish Counts Three and Four as timely filed against Defendant.